UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER L. DANIEL, #216345,

        Petitioner,

v.                                    CASE NO. 16-CV-12043
                                       HONORABLE MARK A. GOLDSMITH

BONITA HOFFNER,

        Respondent.

_____/

**OPINION & ORDER
(1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS (Dkt. 1), (2)
DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO
PROCEED IN FORMA PAUPERIS ON APPEAL**

      This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Peter L.

Daniel ("Petitioner") was convicted of premeditated first-degree murder, Mich. Comp. Laws

§ 750.316(1)(a), conspiracy to commit first-degree murder, Mich. Comp. Laws §§ 750.157a,

750.316, and possession of a firearm during the commission of a felony, § 750.227b, following a

jury trial with co-defendants Paul Edward Daniel, his twin brother, (same jury) and Leonard Dee

McGlown (separate jury) in the Lenawee County Circuit Court in 2011. He was sentenced to

concurrent terms of life imprisonment without parole on the murder and conspiracy convictions

and a consecutive term of two years imprisonment on the felony firearm conviction in 2012.[1]

      In his pleadings, Petitioner raises claims concerning the bindover decision, the jury

selection procedure, the use of electronic restraints at trial, the admission of shooting

reconstruction expert testimony, the denial of a mistrial motion alleging extraneous jury influence,

_____

[1] Petitioner's co-defendants were convicted of the same offenses. A fourth co-defendant, Cordall
Neal, Petitioner's nephew, was convicted of murder and weapons offenses in a separate trial.

and the denial of a directed verdict motion. Respondent has filed an answer to the petition contending that it should be denied. For the reasons that follow, the Court finds that Petitioner's claims lack merit and that the petition should be denied. The Court also concludes that a certificate of appealability and leave to proceed in forma pauperis on appeal should be denied.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner's convictions arise from the shooting death of a man in his car on a street in Adrian, Michigan on February 9, 2002. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> This case arises from the shooting of Marcus Newsom on February 9, 2002. According to the prosecution, defendants, along with codefendant Cordall Neal, shot the victim in his car at about 9:30 p .m. According to witness testimony, the victim was driving in a red car when a light-colored van either slowed or stopped next to the victim's car at the intersection of Park Street and College Avenue in Adrian, Michigan. Gun shots were heard, and the van left the scene immediately. The victim was found badly injured in his vehicle, which belonged to his sister, and died shortly thereafter in the hospital from multiple gunshot wounds. A few minutes after the shooting, defendants were stopped by police because they were driving in a light-colored van which matched witnesses' descriptions of the van involved in the shooting. Neal was in the driver's seat, defendant McGlown was in the passenger seat, and the Daniel defendants were in the back seat. Later, while retracing the route between the shooting and the location where defendants were stopped, police recovered two revolvers, a pistol, and three gloves that had been discarded in the roadway. Bullets from one of the revolvers were found in the victim's vehicle, and bullets from the pistol were found in the victim's body.

> Defendants were subsequently charged and tried for murder. The victim's aunt testified that Neal called her after the shooting. Allegedly, Neal had been trying to shoot the victim's sister's boyfriend, Jamal Bradley, because Bradley allegedly robbed Neal's grandmother and shot Neal's uncle. Both the victim and Bradley frequently drove the victim's sister's vehicle, a red car. Neal told the victim's aunt that he had paid his twin uncles to kill Bradley. According to Neal, defendants had shot the victim by mistake because they thought it was Bradley. Neal told the victim's aunt that he was driving and fired no shots.

After a nineteen-day trial, defendants were convicted of first-degree premeditated murder, conspiracy to commit first-degree murder, and felony-firearm. At trial, all three defendants were ordered to wear electronic restraints. In 2012, defendants appealed their convictions, and filed motions to remand for an evidentiary hearing on the use of restraints at trial. This Court granted defendant's motions, and the trial court held an evidentiary hearing on the issue. Following the hearing, the trial court found no error in its decision to order defendants to wear electronic restraints and refused to grant a new trial.

People v. Daniel, No. 308575, 2014 WL 3844010, *1 (Mich. Ct. App. Aug. 5, 2014) (footnote omitted) (unpublished, consolidated appeals).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising several claims, including those presented on habeas review. The court denied relief on those claims and affirmed Petitioner's convictions and sentences. Id. at *2-11, 18-20. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. People v. Daniel, 861 N.W.2d 32 (Mich. 2015).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I.      He was improperly bound over for trial as the testimony of Ronald Slusser, excluded as irrelevant and prejudicial at trial, was the primary evidence at the bind-over.

II.     He is entitled to a new trial where the trial court erred by not severing the trials of each defendant. Furthermore, the trial court's decision ordering separate juries partway through jury voir dire, then awarding the first jury to one defendant rather than starting the process anew when it became apparent that two juries were necessary, was clearly erroneous.

III.    The trial court clearly erred and his constitutional due process right and right to be free from cruel and unusual punishment was violated when the trial court refused to remove the taser belt devices that were placed upon the defendants. Defendants were forced to sit through the entire trial in fear of physical punishment. There was no need for additional security given that the defendants were already bound and shackled. The taser belts amounted to pretrial punishment and impaired the defendants' right to assist in their own trial.

3

IV.     The trial court clearly erred when it allowed the testimony of the various "experts" who presented opinion testimony based purely on conjecture. The testimony of Reinhard Pope and Allen Avery as to the reconstruction of the shooting scene was unduly prejudicial, not based upon evidence, and not even probative of whether or not he was the perpetrator. It served only to obfuscate the facts of the case and confuse the jury. He is entitled to new trial.

V.      The trial court clearly erred when it denied his motion for a mistrial after one of the jurors heard "testimony" from a family member of a defendant in the court elevator that indicated he was a violent man.

VI.     The trial court clearly erred when it denied his motion for a directed verdict.

Respondent has filed an answer to the petition contending that certain claims are waived and/or procedurally defaulted and that all of the claims lack merit.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 et seq., sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-406 (2000)); see also Bell v. Cone, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413); see also Bell, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-521 (citations omitted); see also Williams, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Lindh, 521 U.S. at 333, n.7); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments

or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id.; see also White v. Woodall, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. Woods v. Etherton, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. Williams, 529 U.S. at 412; see also Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting Wright v. Van Patten, 552 U.S. 120, 125-126 (2008)); Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); see also Mitchell,

540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. Parker v. Matthews, 567 U.S. 37, 48-49 (2012); see also Lopez v. Smith, _ U.S. _ 135 S. Ct. 1, 2 (2014). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003)); Dickens v. Jones, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

#### A. Bind-Over Claim

Petitioner first asserts that he is entitled to habeas relief because he was improperly bound over for trial. Specifically, he asserts that the bind-over was improper because the decision relied upon the preliminary examination testimony from Ronald Slusser, which implicated defendant McGlown, but was not admitted against Petitioner at trial. Respondent contends that this claim is not cognizable upon habeas review and does not warrant relief.

The Michigan Court of Appeals denied relief on this claim finding that an evidentiary deficiency at the preliminary examination is generally not a basis for vacating a subsequent conviction after a fair trial, that there was no evidentiary deficiency at the bind-over where Slusser

was one of nine witnesses who testified, and that ample evidence supported Petitioner's convictions at trial. Daniel, 2014 WL 3844010 at *11.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The United States Supreme Court has held that the Federal Constitution does not require that a probable cause hearing be conducted prior to a criminal trial. Gerstein v. Pugh, 420 U.S. 103, 119, 125 n.26 (1975). Accordingly, the bindover decision constitutes a state law issue that does not implicate a federal constitutional right and is not subject to review in a federal habeas proceeding. See Schacks v. Tessmer, No. 00-1062, 2001 WL 523533, *6 (6th Cir. May 8, 2001) (refusing to review state court determination that second-degree murder conviction rendered bind-over sufficiency of the evidence challenge moot); Dorchy v. Jones, 320 F. Supp. 2d 564, 578-579 (E.D. Mich. 2004) (denying habeas relief on state prisoner's claim that there was insufficient evidence to bind him over for trial); see also Estelle v. McGuire, 502 U.S. 62, 67 (1991) (ruling that habeas relief is not available for perceived violations of state law).[2]

Petitioner fails to establish a violation of his constitutional rights. There is no evidence that the bindover decision was the product of harassment or other impropriety. Petitioner was given all of the process he was due. Additionally, as explained by the Michigan Court of Appeals, there was other, sufficient evidence presented at the preliminary examination to support the bind-over decision and any error was harmless given Petitioner's convictions at trial. Habeas relief is not warranted on this claim.

### B. Jury Selection Procedure Claim

---

[2] Even under Michigan law, any error in the preliminary examination proceeding is considered harmless once a valid conviction has been obtained. See People v. Hall, 460 N.W.2d 520 (Mich. 1990).

Petitioner next asserts that he is entitled to habeas relief because the trial court initially denied his motion to sever his trial from co-defendant Leonard McGlown or to order separate juries for the defendants and then subsequently ordering a separate jury, for McGlown during jury voir dire and assigning the first jury selected to McGlown.  Petitioner alleges that this process required him and his co-defendant brother, Paul Daniel, to select their jury from less desirable jurors.  Respondent contends that Petitioner waived and procedurally defaulted this claim and that the claim lacks merit.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  Wainwright v. Sykes, 433 U.S. 72, 85-87 (1977); Couch v. Jabe, 951 F.2d 94, 96 (6th Cir. 1991).  The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  White v. Mitchell, 431 F.3d 517, 524 (6th Cir. 2006); Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005); Coleman v. Mitchell, 244 F.3d 533, 539 (6th Cir. 2001).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  Harris v. Reed, 489 U.S. 255, 263-264 (1989).  The last explained state court ruling is used to make this determination.  Ylst v. Nunnemaker, 501 U.S. 797, 803-805 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on this jury selection claim.  In denying relief, the court relied upon a state procedural bar – Petitioner's agreement to the seated jury, see 10/6/11 Trial Tr., Vol. 8 at 7-8, 13-14, PageID.994-995, 996 (Dkt. 8-19), which the court found to constitute a waiver of this issue.  Daniel, 2014 WL 3844010 at *11.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors.  People v. Carines, 597 N.W.2d

130, 138 (Mich. 1999); People v. Stanaway, 521 N.W.2d 557, 579 (Mich. 1994); see also Coleman v. Thompson, 501 U.S. 722, 750-751 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. Paprocki v. Foltz, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. Girts v. Yanai, 501 F.3d 743, 755 (6th Cir. 2007); Hinkle v. Randle, 271 F.3d 239, 244 (6th Cir. 2001); Seymour v. Walker, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. McBee v. Abramajtys, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied relief on this claim based a procedural default – Petitioner's agreement with the seated jury, i.e., his failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. Coleman, 501 U.S. at 753; Gravley v. Mills, 87 F.3d 779, 784-785 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated the ability to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. Amadeo v. Zant, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. McCleskey v. Zant, 499 U.S. 467, 493-494 (1991).

Petitioner neither alleges nor establishes cause to excuse this default. A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. Smith v. Murray, 477 U.S. 527, 533 (1986); Long v. McKeen, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court notes that Petitioner cannot establish prejudice (or

that he is otherwise entitled to habeas relief on the merits of this claim) because, as explained by the Michigan Court of Appeals, the claim also lacks merit. See Daniel, 2014 WL 3844010 at *11 (finding that separate juries were warranted once antagonistic defenses became apparent, that Petitioner failed to provide supporting authority for his argument, and that Petitioner's claim was undercut by the fact that he had unused peremptory challenges and that his jury was selected from McGlown's remaining panel as well as an addition panel). Petitioner fails to cite any Supreme Court precedent or other legal authority in support of this claim – and fails to show that he was prejudiced by the jury selection process. Conclusory allegations do not provide a basis for habeas relief. Cross v. Stovall, 238 F. App'x 32, 39-40 (6th Cir. 2007); Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); see also Washington v. Renico, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings).

Petitioner also fails to establish that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of someone who is actually innocent. Schlup v. Delo, 513 U.S. 298, 326-327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324. Petitioner makes no such showing. This claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

### C. Use of Electronic Restraint Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court used an electronic restraint on his leg at trial in violation of his constitutional rights, including his rights to counsel, due process, and a fair trial. Respondent contends that Petitioner waived and procedurally defaulted this claim and that the claim lacks merit.

As discussed, federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. Wainwright, 433 U.S. at 85-87. The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." White, 431 F.3d at 524; see also Howard, 405 F.3d at 477; Coleman, 244 F.3d at 539. The last explained state court judgment should be used to make this determination. Ylst, 501 U.S. at 803-805. If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. Id.

The Michigan Court of Appeals rendered the last reasoned opinion on this electronic restraint claim. In denying relief, the court relied upon a state procedural bar – Petitioner's intentional display of his restraint at trial and his express agreement to waive any claims of prejudice related to the exposure of the restraint, see 9/28/11 Trial Tr., Vol. 2 at 13-14, PageID.720 (Dkt. 8-13), which the court found to constitute a waiver of the issue. Daniel, 2014 WL 3844010 at *2. As discussed, the failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. Carines, 597 N.W.2d at 138; Stanaway, 521 N.W.2d at 579; see also Coleman, 501 U.S. at 750-751. Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. Paprocki, 869 F.2d at 285. Plain error review does not constitute a waiver of state procedural default rules. Girts, 501 F.3d at 755; Hinkle, 271 F.3d at 244; Seymour, 224 F.3d at 557. Nor

does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative.  McBee, 929 F.2d at 267.  The Michigan Court of Appeals denied relief on this claim based a procedural default – Petitioner's intentional conduct in displaying the restraint and his express waiver of claims arising from such conduct, i.e., his failure to object at trial.

Again, as discussed, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750-751; Gravley, 87 F.3d at 784-785.  Petitioner neither alleges nor establishes cause to excuse this procedural default.  Consequently, this Court need not address the issue of prejudice on habeas review.  Smith, 477 U.S. at 533; Long, 722 F.2d at 289.

The Court further finds, however, that Petitioner cannot establish actual prejudice as this claim lacks merit.  The United States Supreme Court has recognized that due process precludes the use of visible physical restraints upon a defendant "absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." Deck v. Missouri, 544 U.S. 622, 629 (2005) (citing Holbrook v. Flynn, 475 U.S. 560, 568-569 (1986); Illinois v. Allen, 397 U.S. 337, 343-344 (1970)).  The Supreme Court expressed concern that visible restraints may undermine the presumption of innocence, may interfere with the defendant's ability to communicate with counsel and participate in his or her defense, and may impair the dignity of the judicial proceedings.  Id. at 630-631.  Restraints may be used upon a defendant at the trial court's discretion to prevent escape, for security in the courtroom, and to maintain order during trial.  Deck, 544 U.S. at 628; Kennedy v. Cardwell, 487 F.2d 101, 105-107 (6th Cir. 1973).  When a court, "without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to

make out a due process violation. The State must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.'" Deck, 544 U.S. at 635 (citing Chapman v. California, 386 U.S. 18, 24 (1967)).

In this case, as explained by the Michigan Court of Appeals on plain error review, the trial court properly determined that the use of electronic restraints was necessary for security and safety reasons due to the seriousness of the charges and sentences, the multiple defendants, juries, and family members in the courtroom, each of the defendants' criminal histories, the antagonism among the defendants, and defendant McGlown's and Petitioner's threats of assaultive behavior.[3] Daniel, 2014 WL 3844010 at *4; see also 1/24/13 Evid. Hrg. Tr. at 111-118, PageID.1689-1696 (Dkt. 8-33). Such circumstances justified the use of the electronic restraint. See, e.g., Deck, 544 U.S. at 628; Lakin v. Stine, 431 F.3d 959, 964 (6th Cir. 2005) (listing factors, such as the defendant's record, temperament, and situation, the state of the courtroom, and the defendant's physical condition, for a trial court to consider in deciding whether to use restraints).

Additionally, other than Petitioner's intentional display of the restraint, which looked like an athletic wrap, Daniel, 2014 WL 3844010 at *5; see also 9/28/11 Trial Tr., Vol. 2 at 14, PageID.720, at the start of trial (before his jury was selected), the restraint was not otherwise visible to the jury. Daniel, 2014 WL 3844010 at *5; see also 9/29/11, Trial Tr., Vol. 3 at 6, PageID.768 (Dkt. 8-14); 10/3/11, Trial Tr., Vol. 5 at 36, 44, PageID.869, 871 (Dkt. 8-16); 1/24/13 Evid. Hrg. Tr. at 117, PageID.1695. When an electronic restraint is not visible or recognizable as a restraint, there is no violation of clearly established Supreme Court precedent so as to justify federal habeas relief. Leonard v. Warden, 846 F.3d 832, 842-843 (6th Cir. 2017); Earhart v. Konteh, 589 F.3d 337, 349 (6th Cir. 2009).

---

[3] Petitioner also head-butted a detective who was applying the restraint.

Lastly, Petitioner fails to show that the use of the restraint on his leg impeded his ability to communicate with his lawyer or participate in his defense. As explained by the Michigan Court of Appeals, the record indicates that Petitioner was able to communicate with defense counsel and with his co-defendant brother during trial and was told that the device would only be activated if he became unruly during the trial. Daniel, 2014 WL 3844010 at *5; see also 1/24/13 Evid. Hrg. at 20, 25-26, 45, PageID.1598, 1603-1604, 1623. Petitioner fails to establish a violation of his constitutional rights. This claim thus lacks merit.

Lastly, as discussed supra, Petitioner fails to establish that a fundamental miscarriage of justice occurred as he fails to present new reliable evidence of his actual innocence. Bousley, 523 U.S. at 624; Schlup, 513 U.S. at 324-327. This claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

**D.     Expert Testimony Claim**

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting expert testimony from Reinhard Pope and Allan Avery regarding the crime scene and shooting reconstruction. Respondent contends that this claim is not cognizable on habeas review and that it lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Serra v. Michigan Dept. of Corrections, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness" may it violate due process and warrant habeas relief. Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals denied relief on this claim finding that both Pope and Avery were properly qualified to testify as experts, that the crime scene and shooting

reconstruction evidence was relevant and probative, and that the evidence was properly admitted at trial as a matter of state law. Daniel, 2014 WL 3844010 at *18-20.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner challenges the admission of the expert testimony under the Michigan Rules of Evidence, he merely alleges a violation of state law which does not entitle him to federal habeas relief. See Walker v. Harry, 462 F. App'x 543, 545 (6th Cir. 2012); Wheeler v. Jones, 59 F. App'x 23, 28 (6th Cir. 2003). A federal court may grant an application for writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States. See 28 U.S.C. § 2254(a). Habeas relief does not lie for perceived errors of state law. Estelle, 502 U.S. at 67-68. State courts are the final arbiters of state law and federal courts will not intervene in such matters. Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."); Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir. 2002). Petitioner is not entitled to habeas relief based upon a perceived violation of Michigan law as to the use of this evidence.

Second, Petitioner is not entitled to habeas relief on any claim that the admission of the expert testimony violated his constitutional rights. The testimony was relevant and admissible to provide the jury with information about the crime scene, the firearms and ammunition used in the shooting, and the bullet trajectories. The admission of the expert testimony did not render Petitioner's trial fundamentally unfair. Moreover, Petitioner does not provide any federal constitutional law in support of this claim. The only federal case that he cites (in his state appellate court pleadings) is Daubert v. Merrell Dow Phamaceuticals, Inc., 509 U.S. 579 (1993). Daubert,

however, concerns the Federal Rules of Evidence which are not relevant to Petitioner's state criminal proceedings. Norris v. Schotten, 146 F.3d 314, 335 (6th Cir. 1998). Petitioner fails to establish a constitutional violation. Habeas relief is therefore not warranted on this claim.

### E. Mistrial/Extraneous Jury Influence Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in denying his mistrial motion based upon extraneous jury influence. Respondent contends that this claim lacks merit.

A trial court has discretion to grant or deny a motion for a mistrial in the absence of a showing of manifest necessity. See Arizona v. Washington, 434 U.S. 497, 506-510 (1978) (mistrial due to deadlocked jury); Walls v. Konteh, 490 F.3d 432, 436 (6th Cir. 2007); Clemmons v. Sowders, 34 F.3d 352, 354-355 (6th Cir. 1994). "The Sixth and Fourteenth Amendments guarantee a criminal defendant an impartial jury in state court." Mahdi v. Bagley, 522 F.3d 631, 636 (6th Cir. 2008) (citing Ristaino v. Ross, 424 U.S. 589, 595 n.6 (1976); Irvin v. Dowd, 366 U.S. 717, 722 (1961)). Jurors, however, are presumed to be impartial, United States v. Guzman, 450 F.3d 627, 629 (6th Cir. 2006) (citing Irvin, 366 U.S. at 723), and "due process does not require a new trial every time a juror has been placed in a potentially compromising situation. . . . Due process means a jury capable and willing to decide the case solely on the evidence before it...." Smith v. Phillips, 455 U.S. 209, 217 (1982). The petitioner bears the burden of proving that the jury was biased. See United States v. Wheaton, 517 F.3d 350, 362 (6th Cir. 2008).

Under clearly established Supreme Court precedent, a defendant who alleges implied juror bias is entitled to a hearing in which he or she has "the opportunity to prove actual bias." Smith, 455 U.S. at 215; see also Remmer v. United States, 347 U.S. 227, 229-230 (1954). To be entitled to such a hearing, however, a defendant must do more than simply raise the possibility of bias. United States v. Herndon, 156 F.3d 629, 635 (6th Cir. 1998). A defendant must raise a "colorable

claim of extraneous influence" to warrant a hearing into possible jury bias. United States v. Davis, 177 F.3d 552, 557 (6th Cir. 1999). An "extraneous influence" is defined as "one derived from specific knowledge about or a relationship with either the parties or their witnesses." Herndon, 156 F.3d at 636.

The Michigan Court of Appeals discussed the facts underlying this claim, reviewed the applicable legal standards, and denied relief. The court explained in relevant part:

> Near the end of trial, the trial court advised the parties and counsel that it had received a note from a juror on the Daniel defendants' jury concerning "a juror who was engaged [in] or privy to comments made by a courtroom visitor that bears further investigation." The juror was questioned by the court and related that the out-of-court exchange occurred the previous morning in an elevator en route to the courtroom. Another woman on the elevator declared that she had awoken "to the worst morning of [her] life." When the juror responded, "Oh really," the woman answered, "Yeah, my boyfriend called me this morning and said if I didn't get him off this case, that he would kill my whole family." The juror replied, "Well, you should tell someone." She later saw the woman from the elevator in the courtroom. The juror added that she inquired of the other jurors what she should do, and they suggested writing a note to the court. The juror explained that she did not advise the court of the exchange the previous day because she believed that the woman from the elevator might follow her advice to disclose the threat.
>
> Upon questioning by the court, the juror denied that the elevator exchange created any problem with hearing evidence, applying the law, deliberating with her fellow jurors, or rendering a verdict free of any prejudice or bias. The juror also denied feeling any fear or intimidation due to the exchange, explaining that she had assumed the woman from the elevator did not know who she was or that she was on a jury. At the request of the Daniel defendants, the trial court questioned the remaining jurors about their exposure to the statement. The jurors remembered hearing details about a boyfriend having threatened a woman's family and urging the juror to inform the court regarding the conversation. All jurors concurred that they could without hesitation remain impartial in considering the evidence properly presented in the case, adhere to the court's instructions, participate in unbiased deliberations, and reach impartial verdicts regarding the Daniel defendants.
>
> After reviewing the relevant record and the trial court's ruling, we cannot characterize as clearly erroneous the court's factual findings concerning the absence of any prejudice to the Daniel defendants. MCR 2.613(C). The trial court also expressly found credible the jurors' testimony, a determination to which this Court generally defers. Id. We conclude that because the trial court properly found no conceivable prejudice to the Daniel defendants arising from the jury's exposure

to extraneous information, the court acted within its discretion in denying the motions for a mistrial. <u>Budzyn</u>, 456 Mich. at 88–89. Consequently, the Daniel defendants have not established a basis for a new trial.

<u>Daniel</u>, 2014 WL 3844010 at *6-7 (footnote omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. While the jury was exposed to an extraneous influence, the trial court conducted a hearing on the matter, questioned the jury members, and determined that a mistrial was not warranted based upon the jurors' assurances that they could remain impartial and decide the case based upon the evidence presented at trial. <u>See</u> 10/20/11 Trial Tr., Vol. 16 at 87-90, 97-150, PageID.1392-1393, 1395-1408 (Dkt. 8-27); 10/21/11 Trial Tr. Vol. 17 at 5-6, PageID.1433 (Dkt. 8-28). The state court's credibility finding on jury impartiality is a factual determination, <u>Patton v. Yount</u>, 467 U.S. 1025, 1036 (1984), which is entitled to deference on habeas review. <u>Murphy v. Florida</u>, 421 U.S. 794, 798 (1975); <u>Williams v. Bagley</u>, 380 F.3d 932, 953 (6th Cir. 2004); <u>Gall v. Parker</u>, 231 F.3d 265, 309 (6th Cir. 2000). Petitioner does not rebut this presumption with clear and convincing evidence. The trial court's decision, and the Michigan Court of Appeals' ruling affirming that decision, were reasonable. Petitioner fails to establish that the jury was improperly influenced and was unable to decide the case in a fair manner solely based upon the evidence presented at trial. Habeas relief is not warranted on this claim.

## F. Directed Verdict/Insufficient Evidence Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court erred in denying his motion for a directed verdict. Respondent contends that this claim is a state law issue not cognizable upon habeas review and that, to the extent it constitutes an insufficient evidence claim, it lacks merit.

As an initial matter, the Court agrees with Respondent that Petitioner is not entitled to habeas relief on any claim that the trial court erred in denying his directed verdict motion. A state court's alleged error in denying a directed verdict motion is a state law issue which is not cognizable in a federal habeas proceeding. See King v. Trippett, 27 F. App'x 506, 510 (6th Cir. 2001) (citing Estelle, 502 U.S. at 67-68); see also Holloway v. Palmer, No. 16-2450, 2017 WL 4844457, *3 (6th Cir. April 5, 2017) (citing King). Habeas relief does not lie for a perceived violation of state law. Pulley v. Harris, 465 U.S. 37, 41 (1984). Habeas relief is thus not warranted on any such claim.

With regard to the sufficiency of the evidence, the Due Process Clause protects an accused against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The Jackson standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n.16).

Additionally, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." Cavazos v. Smith, 565 U.S. 1, 2 (2011). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." Matthews, 319 F.3d at 788-789.

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the killing was premeditated and deliberate. <u>People v. Kelly</u>, 588 N.W.2d 480, 488 (Mich. Ct. App. 1998); Mich. Comp. Laws § 750.316. Premeditation and deliberation may be established by evidence showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." <u>People v. Schollaert</u>, 170, 486 N.W.2d 312, 318 (Mich. Ct. App. 1992); <u>see also</u> <u>People v. Abraham</u>, 599 N.W.2d 736, 745 (Mich. Ct. App. 1999). The prosecution must prove every element of a charged offense beyond a reasonable doubt. This burden includes proving that the defendant is the person who committed the crime. <u>People v. Oliphant</u>, 250 N.W.2d 443, 449 (Mich. 1976); <u>People v. Kern</u>, 149 N.W.2d 216, 218 (Mich. Ct. App. 1967). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, <u>People v. Nowack</u>, 614 N.W.2d 78, 81 (Mich. 2000); <u>People v. Jolly</u>, 502 N.W.2d 177, 180 (Mich. 1993); including identity, <u>Kern</u>, 149 N.W.2d. at 218, and intent or state of mind. <u>People v. Dumas</u>, 563 N.W.2d 31, 34 (Mich. 1997); <u>see also</u> <u>Nowack</u>, 614 N.W.2d at 83.

To convict a defendant under an aiding and abetting theory, a prosecutor must show: (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement. <u>People v. Carines</u>, 597 N.W.2d 130, 135 (Mich. 1999); <u>see also</u> <u>People v. Moore</u>, 679 N.W.2d 41 (Mich. 2004); Mich. Comp. Laws § 767.39. An aider and abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, the defendant's

participation in the planning or execution of the crime, and evidence of flight after the crime. Carines, 597 N.W.2d at 135.

A conspiracy under Michigan law involves the mutual agreement or understanding, express or implied, between two or more persons to commit a criminal act or a legal act by unlawful means. People v. Anderson, 340 N.W.2d 634, 635 (Mich. 1983); Mich. Comp. Laws § 750.157a. A conspiracy may be established by circumstantial evidence and may be based on inference. People v. McKenzie, 522 N.W.2d 661, 663 (Mich. Ct. App. 1994). Direct proof of agreement is not required, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact. People v. Justice (after remand), 562 N.W.2d 652, 659 (Mich. 1997).

The elements of felony firearm are: (1) the defendant possessed a firearm, (2) during the commission of, or an attempt to commit, a felony offense. People v. Akins, 675 N.W.2d 863, 873 (Mich. Ct. App. 2003) (internal quotation marks omitted); Mich. Comp. Laws § 750.227b. Possession of a firearm can be actual or constructive and can be proven by circumstantial evidence. People v. Hill, 446 N.W.2d 140, 142-143 (Mich. 1989).

Applying the Jackson standard and applicable state law, the Michigan Court of Appeals denied relief on this claim finding that the prosecution presented sufficient evidence to support Petitioner's convictions. The court explained in relevant part:

> We conclude that sufficient evidence was presented to establish beyond a reasonable doubt that the Daniel defendants conspired to kill Jamal Bradley; premeditated and deliberated Bradley's killing, and accidentally shot the victim intending to kill Bradley. Residents of Park Street testified that around 9:30 p.m. on February 9, 2002, they heard multiple, rapid-fire gunshots emanating from the nearby intersection of Park Street and College Avenue. Witnesses observed in the intersection a light-colored (white or gray or silver), windowless contractor's van with its lights off stopped next to a red car, and saw the van accelerate away from the scene. Two witnesses described hearing gunshots that sounded different: one witness recalled hearing "loud bangs and then a rapid succession of smaller ones," and another witness recounted hearing rapid fire followed by "a big boom, ... one

big shot." Two witnesses recounted that the van stopped in the street next to the victim's red car with the van's passenger side facing the driver's side of the car, and the van and the car were stopped within 3 to 10 feet of each other.

Adrian Township Police Officer Mark Houser testified that while on patrol at approximately 9:30 p.m. on February 9, 2002, he heard a dispatch regarding a white, full-size Ford van that reportedly was involved in a shooting in Adrian. A short time later he observed a white, full-size Ford van heading away from Adrian, and he effectuated a traffic stop of the vehicle. The van contained Cordall Neal, who was driving, defendant McGlown, who was in the front passenger seat, and the Daniel defendants, who rode in the back of the van. After retracing the route of the pursuit, Houser recovered in the roadway a Smith & Wesson .45–caliber revolver, a Rossi .38–caliber/.357–caliber revolver, and a MAC–10 9–millimeter semiautomatic pistol.

Stuart Burritt, an expert in firearms and tool mark identification, examined the firearms and other evidence. He determined that identifiable bullet remnants recovered from the victim's body and several other bullets recovered from the victim's car matched the 9–millimeter pistol; a bullet core removed from near the passenger door of the victim's car "originated from a .40 or .45–plus caliber firearm;" 12 casings recovered from the intersection of Park Street and College Avenue also matched the 9–millimeter pistol; and a bullet fragment recovered from just inside the van's back doors matched the .38–caliber revolver. The testimony of Burritt and Reinhard Pope, an expert in shooting scene reconstructions, established that the rear passenger-side doors of the van, which both opened outward, had sustained a bullet hole in the door closest to the front passenger-side door of the van. Burritt and Pope opined that the hole in the van's rear passenger-side door had been made by a bullet traveling from the outside to the inside of the van. Pope ascertained that "if you swing the door around almost all the way forward, that angle ... would line up with someone sitting in the right front passenger seat of the van and then shooting back" toward the driver's seat of the victim's car.

Burritt testified that he observed areas of bullet damage in the victim's car "to the driver's side door, window area, the roof of the vehicle, and the windshield." Burritt performed measurements of the damaged areas that included the placement of dowels into some of the areas to "suggest possible angle and direction that the bullets might have traveled." In Burritt's estimation, two bullet markings near the middle of the driver's-side car door appeared to have come from a gun at an angle "perpendicular to the vehicle," at least two areas of damage to a "B-pillar of the automobile," located "where the [driver's-side] door closes," apparently struck the car from a gun fired at "a forward-to-back angle," and a hole in the car's windshield was made by a bullet that traveled in "a front-to-back direction."

Pope testified that in March 2010, he attempted to reexamine the van and car and opine "about possible shooting positions," specifically whether the damage to the victim's car "would be consistent with one single shooting position or multiple

shooting positions." Pope positioned the car and the van next to one another four feet apart with van's front bumper 10 inches in front of the car's front bumper, inserting dowels into the obvious holes where damage to the car occurred, and determined the following: (1) three holes in the driver's-side car door came toward the door at "a 90–degree angle, directly from the left side of the car," and (2) another hole entered the driver's-side car door at "about a 60–degree angle from the front," as did a ricochet mark on the car's roof. Pope added that if the victim's car and the van had been stationary next to each other when the shooting occurred, both angular areas of damage to the victim's car could have come from the van's front passenger seat, while the perpendicular damage to the victim's car was "consistent with them having come from the cargo ... compartment of the van."

In summary, ample evidence gave rise to reasonable inferences that all three defendants participated in the shooting of the victim, including the evidence of their positions inside the van shortly after the shooting, the involvement of three different firearms that were discarded in the roadway, and the firing of weapons at multiple angles toward the victim's car. The ambush manner of the shooting, in which the van stopped next to the victim's car and multiple guns were discharged toward the driver's side of the car, following which the van drove away, gave rise to a reasonable inference that defendants intended to kill the car's occupant and premeditated and deliberated the shooting. With respect to the conspiracy charges, the evidence of all three defendants' participation in the seemingly choreographed shooting and their arrest shortly thereafter gave rise to rational inferences that the Daniel defendants participated in an agreement to kill Jamal Bradley. Carolyn Elmore testified that before the shooting, Cordall Neal had advised her of a conflict with Bradley, which involved Bradley's participation in a robbery of Neal's grandmother and the shooting of Neal's uncle. Elmore recounted that Neal had telephoned her "and told [her] that he was going to pay his twin uncles ... five thousand dollars apiece to get" Bradley, and shortly before the shooting on February 9, 2002, Neal called to ask Elmore "whether Bradley was home alone." The evidence allowed the Daniel defendants' jury to find them guilty beyond a reasonable doubt of the conspiracy to commit first-degree murder and first-degree premeditated murder charges.

Daniel, 2014 WL 3844010 at *9-10.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Eyewitnesses to the shooting testified that they saw a red car at the intersection of College and Park streets in Adrian, Michigan around 9:30 p.m. on February 9, 2002. A gray or light-colored work van pulled up alongside the car. The witnesses heard multiple, rapid gunshots being fired and then the van sped away on Maumee street. See, e.g., 10/10/11 Trial Tr., Vol. 9 at 53-56, 67-71, PageID.1023-1024, 1026-1027 (Dkt.

8-20); 10/11/11 Trial Tr., Vol. 10 at 14-19, 29-50, PageID.1052-1053, 1055-1061 (Dkt. 8-21). One witness also testified that the gunshots consisted of a loud bang following by a rapid succession of smaller ones. See id. at 82, PageID.1069. That witness called 911 and approached the red car, which had rolled to a stop, and saw bullet holes and the victim bleeding in the car. Id. at 83-84, PageID.1069. The victim, Marcus Newsom, died from multiple gunshot wounds. Three bullets were removed from his body and additional bullets were recovered from his clothes. See 10/11/11 Trial Tr., Vol. 10 at 74, 119-121, PageID.1067, 1078-1079; 10/13/11 Trial Tr., Vol. 12 at 47, PageID.1182 (Dkt. 8-23)

Police, responding to the 911 call, spotted a van matching the description of the one used in the shooting driving north out of town. When they stopped the van, co-defendant Cordall Neal was the driver, co-defendant Leonard McGlown was in the front passenger seat, and Petitioner and his co-defendant brother were in the rear part of the van. See 10/11/11 Trial Tr., Vol. 10 at 130, 135-137, PageID.1081, 1082-1083; 10/12/11 Trial Tr., Vol. 11 at 21, 29, PageID.1122, 1124 (Dkt. 8-22). The police found three handguns near each other along the van's path out of town. See 10/11/11 Trial Tr., Vol. 10 at 144-146, PageID.1084-1085; 10/12/11 Trial Tr., Vol. 11 at 8-18, PageID.1119-1121. Expert testimony linked those guns to the bullets recovered from the victim, the red car, and the crime scene. See 10/13/11 Trial Tr., Vol. 12 at 111-112, 132-140, 151, PageID.1198, 1203-1205, 1208. The police also found gloves near the handguns along the van's path which were similar to gloves found inside the van. See 10/11/11 Trial Tr., Vol. 10 at 144-146, PageID.1084-1085; 10/12/11 Trial Tr., Vol. 11 at 8-18, PageID.1119-1121; 10/18/11 Trial Tr., Vol. 14 at 13-14, 38, PageID.1279, 1285 (Dkt. 8-25)

Additional testimony, including that from the crime scene and shooting reconstruction experts, indicated that the three firearms used in the shooting were fired at the same time, that the gunshots hit the red car from different angles, that there was more than one shooting position

from inside the van, and that the shots were likely fired from the passenger seat and rear of the van into the red car. See 10/10/11 Trial Tr., Vol. 9 at 54-55, 62, 68-71, 76, 82, PageID.1023, 1025, 1027, 1029, 1030; 10/11/11 Trial Tr., Vol. 10 at 15, 19, 30, 32, 43-44, PageID.1052, 1053, 1056, 1056, 1059; 10/13/11 Trial Tr., Vol. 12 at 119-123, PageID.1200-1201; 10/14/11 Trial Tr., Vol. 13 at 67-69, 72-73, PageID.1252-1253, 1254; 10/18/11 Trial Tr., Vol. 14 at 91, PageID.1298.

The trial testimony also established that a man named Jamal Bradley, who often drove the red car involved in the crime, was the intended target of the shooting, but that Marcus Newsom was killed instead. A witness testified that co-defendant Cordall Neal told her that he had a dispute with Bradley and that he was going to pay his twin uncles (Petitioner and his brother) $5,000 to get Bradley. See 10/21/11 Trial Tr., Vol. 17 at 13-14, 29-30, PageID.1435, 1439.

The foregoing direct and circumstantial evidence, when considered in a light favorable to the prosecution, establishes beyond a reasonable doubt that Petitioner committed first-degree premeditated murder (as a principal or as an aider and abettor), that he engaged in a conspiracy to do so, and that he did so while using a firearm. Petitioner challenges the inferences the jury drew from the testimony presented at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. Jackson, 443 U.S. at 326; Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002); Walker v. Engle, 703 F.2d 959, 969-970 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The evidence presented at trial, viewed in a light favorable to the prosecution, established Petitioner's guilt of premeditated first-degree murder, conspiracy to

commit first-degree murder, and felony firearm beyond a reasonable doubt. Habeas relief is not warranted on this claim.

## IV. CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claims debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484-485 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Slack, 528 U.S. at 484-485.

Having considered the matter, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural rulings. Accordingly,

the Court denies a certificate of appealability.  The Court also denies Petitioner leave to proceed

in forma pauperis on appeal as an appeal cannot be taken in good faith.  <u>See</u> Fed. R. App. P. 24(a).

SO ORDERED.

Dated:  August 27, 2018                                    s/Mark A. Goldsmith
       Detroit, Michigan                            MARK A. GOLDSMITH
                                           United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any
unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail
addresses disclosed on the Notice of Electronic Filing on August 27, 2018.

                                           s/Karri Sandusky
                                         Case Manager